```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
 IN RE: Acetaminophen – ASD-ADHD         :
 Products Liability Litigation           :
                                         :    22md3043 (DLC)
 This Document Relates To:               :    22mc3043 (DLC)
 Hatfield, et al., v. Walmart Inc.,      :    22cv9011 (DLC)
 22cv9011                                :
                                         :    OPINION AND
---------------------------------------- X    ORDER
```

APPEARANCES:

For plaintiffs:
Keller Postman LLC
Ashley C. Keller
150 N. Riverside Plaza, Ste. 4100
Chicago, IL 60606

Watts Guerra LLC
Mikal C. Watts
Millennium Park Plaza RFO
Ste. 410, C112
Guaynabo, Puerto Rico 00966

The Lanier Law Firm
W. Mark Lanier
Tower 56
126 East 56th St., 6th Floor
New York, NY 10022

For defendant Walmart Inc.:
King & Spalding LLP
Kristen Renee Fournier
1185 Ave. of the Americas, 34th Floor
New York, NY 10036

King & Spalding LLP
Donald F. Zimmer, Jr.
Ethan P. Davis
50 California St., Ste. 3300
San Francisco, CA 94111

King & Spalding LLP

```
Livia M. Kiser
110 N. Wacker Dr., Ste. 3800
Chicago, IL 60606

King & Spalding LLP
Jeffrey S. Bucholtz
1700 Pennsylvania Ave. N.W., Ste. 900
Washington, DC 20006

For 22md3043 defendant Sam's West, Inc.:
King & Spalding LLP
Kristen Renee Fournier
1185 Ave. of the Americas, 34th Floor
New York, NY 10036

King & Spalding LLP
Donald F. Zimmer, Jr.
50 California St., Ste. 3300
San Francisco, CA 94111

King & Spalding LLP
Austin Evans
500 W. 2nd St., Ste. 1800
Austin, TX 78701

For 22md3043 defendant The Kroger Co.:
Stone | Dean LLP
Gregory E. Stone
Joseph A. Lara
21052 Oxnard St.
Woodland Hills, CA 91367

For 22md3043 defendant Rite Aid Corporation:
Smith, Sovik, Kendrick & Sugnet, P.C.
David M. Katz
Karen G. Felter
250 S. Clinton St., Ste. 600
Syracuse, NY 13202

For 22md3043 defendants CVS Pharmacy, Inc., Costco Wholesale
Corp., and Walgreen Co.:
Barnes & Thornburg LLP
Kristen L. Richer
2029 Century Park E., Ste. 300
Los Angeles, CA 90067
```

```
Barnes & Thornburg LLP
Sandra M. Ko
1717 Pennsylvania Ave. N.W., Ste. 500
Washington, DC 20006

Barnes & Thornburg LLP
Nadine S. Kohane
390 Madison Ave., 12th Floor
New York, NY 10017
```

For 22md3043 defendants 7-Eleven, Inc., Dollar Tree Stores, Inc., and Family Dollar Stores, LLC:
```
Lori B. Leskin
Mitchel Russell Stern
250 W. 55th St.
New York, NY 10019
```

For 22md3043 defendant Target Corporation:
```
Morrison & Foerster LLP
Julie Y. Park
12531 High Bluff Dr., Ste. 100
San Diego, CA 92130
```

For 22md3043 defendants Safeway Inc. and Dolgencorp, LLC:
```
Winston & Strawn LLP
Amanda L. Groves
Gregory A. Ellis
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
```

DENISE COTE, District Judge:

Robin Hatfield, individually and on behalf of her minor child C.H. (together, "Plaintiffs"), brings this action against Walmart Inc. ("Walmart"). The case is one of several in this multidistrict litigation ("MDL") in which plaintiffs allege that in utero exposure to acetaminophen causes autism spectrum disorder ("ASD") and attention-deficit/hyperactivity disorder ("ADHD") in children. This Opinion addresses two of the grounds

3

contained within Walmart's motion to dismiss: (1) that the Plaintiffs' consumer protection claim brought under Tennessee's Consumer Protection Act, §§ 47-18-104 et seq. ("TCPA"), is expressly preempted by federal law, and (2) that all of Plaintiffs' common law claims are subsumed within the Tennessee Products Liability Act, Tenn. Code Ann. §§ 29-28-101 to -108 ("TPLA") and must be dismissed. For the following reasons, the motion to dismiss is granted in part. The TCPA claim is dismissed as preempted by federal law.

## Background

The following facts are drawn from the Plaintiffs' short form complaint ("SFC") and the master complaint in this MDL that the SFC incorporates by reference. The facts are taken as true for the purposes of this motion. The Court assumes familiarity with its prior Opinions in this MDL addressing motions to dismiss on the ground of preemption and summarizes only those facts relevant to this Opinion. In re Acetaminophen – ASD-ADHD Prods. Liab. Litig., No. 22md3043 (DLC), (S.D.N.Y. Apr. 20, 2023) ("April Opinion"); In re Acetaminophen – ASD-ADHD Prods. Liab. Litig., No. 22md3043 (DLC), 2022 WL 17348351 (S.D.N.Y. Nov. 14, 2022) ("November Opinion").

Hatfield and her child, C.H., both reside in Tennessee. C.H. has ASD. Walmart is a Delaware corporation with its

principal place of business in Arkansas.  Walmart sells several store-branded acetaminophen products, which are collectively referred to as "Equate Acetaminophen."

From October 2011 to June 2012, while pregnant, Hatfield consumed Equate Acetaminophen, which she had purchased in Sweetwater, Tennessee.  Several studies have shown an association between prenatal exposure to acetaminophen and ASD and ADHD in children.  Nonetheless, the label for Equate Acetaminophen did not mention the risk that a child could develop ASD or ADHD if the child's mother consumed acetaminophen while pregnant.  Hatfield asserts that, had she been warned of this risk, she would have taken less Equate Acetaminophen or would not have taken it at all.

On June 7, 2022, the Plaintiffs filed this action in the U.S. District Court for the Western District of Arkansas.  On October 5, the Judicial Panel on Multidistrict Litigation consolidated this action with others asserting claims that prenatal exposure to acetaminophen causes ASD and ADHD in children and transferred the cases to this Court under 28 U.S.C. § 1407.  On November 14, motions to dismiss this action and another action within the MDL on preemption grounds were denied.

At the November 17 initial pretrial conference, a schedule was set for the filing of two master complaints: one naming

manufacturer Johnson & Johnson Consumer Inc. ("JJCI") and another naming Walmart, along with several other retailers (the "Retailer Defendants"). On December 16, the MDL plaintiffs filed the master complaint against the Retailer Defendants.

On January 24, 2023, Hatfield filed her SFC. The SFC asserts claims against Walmart under Tennessee law for strict liability for failure to warn, strict liability for design defect due to inadequate warnings and precautions, negligence, negligent misrepresentation, strict liability misrepresentation, violation of the TCPA, breach of implied warranty, and liability as apparent manufacturer.

On February 10, the Retailer Defendants moved to dismiss all of the SFCs filed against them, including Hatfield's.[1] The motion became fully submitted on March 17.

---

[1] The Court has advised counsel that motions to dismiss should be brought against particular complaints and not against the master complaint. The master complaint is not the operative pleading; it is an administrative document. See Bell v. Publix Super Markets, Inc., 982 F.3d 468, 490 (7th Cir. 2020). The Retailer Defendants' motion has been styled as brought against all complaints filed in the MDL. The Court, therefore, has chosen the SFC for this Opinion because it asserts claims under Tennessee law, and, as relevant to the specific arguments addressed in this Opinion, Tennessee law appears representative of several states' laws.

6

**Discussion**

I.  Choice of Law

A multidistrict litigation transferee court "applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed." Desiano v. Warner-Lambert & Co., 467 F.3d 85, 91 (2d Cir. 2006) (citation omitted).  As explained in the November 14, 2022 Opinion addressing a motion to dismiss the Hatfield action on the ground of preemption, the choice of law for the claims asserted by Hatfield is between the law of Tennessee, her residence, and Arkansas, the state in which she filed the action.  November Opinion, 2022 WL 17348351, at *2.  Both states have consumer protection statutes and product liability statutes that are substantially the same in the relevant respects.

The defendant contends that Tennessee law applies, and the Plaintiffs do not dispute that assertion.  This accords with the application of the Arkansas lex loci delicti doctrine.  Id. at *1; Ganey v. Kawasaki Motors Corp., 234 S.W.3d 838, 846 (Ark. 2006), overruled on other grounds by Lawson v. Simmons Sporting Goods, 569 S.W.3d 865 (Ark. 2019).  While pregnant, Robin Hatfield purchased Walmart's acetaminophen product in Tennessee, and both Hatfield and C.H. reside in Tennessee.  None of the other factors applied in Arkansas' choice-of-law analysis

7

suggests that Arkansas law should apply instead.  Thus, this Opinion applies Tennessee law.

II.  Express Preemption

The defendant seeks to dismiss the Plaintiffs' TCPA claim on the ground that the claim is expressly preempted by federal law.[2]  The motion to dismiss this claim is granted.

"The Supremacy Clause establishes that federal law 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'"  PLIVA, Inc. v. Mensing, 564 U.S. 604, 617 (2011) (quoting U.S. Const., art. VI, cl. 2).  The doctrine of federal preemption provides that, under the Supremacy Clause, "state and local laws that conflict with federal law are without effect."  Grand River Enters. Six Nations, Ltd. v. Boughton, 988 F.3d 114, 125 (2d Cir. 2021) (citation omitted).  There are

---

[2] Walmart and other Retailer Defendants bring motions to dismiss similar claims in other cases in this MDL brought under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201 et seq.; the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401 et seq.; the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43 et seq.; the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605 et seq.; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1 et seq.; and the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 et seq.

three general types of preemption, including, as relevant to this Opinion, express preemption.[3]  Id. at 125-26.

"Express preemption occurs when Congress withdraws specified powers from the States by enacting a statute containing an express preemption provision."  Trikona Advisers Ltd. v. Chugh, 846 F.3d 22, 35 (2d Cir. 2017) (citation omitted).  Here, the relevant provision appears in the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-399g ("FDCA").

21 U.S.C. § 379r(a) provides in pertinent part that

> no State or political subdivision of a State may establish or continue in effect any requirement --
>
> (1) that relates to the regulation of a [non-prescription drug]; and
>
> (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA], the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 et seq.), or the Fair Packaging and Labeling Act (15 U.S.C. 1451 et seq.).

That same section provides, however, that "[n]othing in this section shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State."  Id. § 379r(e).  Thus, through

---

[3] The arguments made by Walmart, the other Retailer Defendants, and JJCI that all claims against them in this MDL must be dismissed due to conflict preemption are addressed in prior Opinions in this litigation.  See April Opinion, No. 22md3043 (DLC); November Opinion, 2022 WL 17348351.

these provisions, "Congress pre-empted certain state requirements concerning over-the-counter medications . . . but expressly preserved product liability actions." Wyeth v. Levine, 555 U.S. 555, 575 n.8 (2009).

"If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008). In determining the scope of preemption, courts "focus on the plain wording of the statute, which is necessarily the best evidence of the scope of Congress's preemptive intent." Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 443 (2d Cir. 2015); see also Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. 115, 125 (2016). "The structure and purpose of the federal statute is also a guide to Congress's intent." Galper, 802 F.3d at 443.

Under the plain wording of the two statutory provisions at issue, the determination of whether the Tennessee law is preempted under § 379r is a two-part inquiry. A court must first determine whether the TCPA "relates to the regulation of" non-prescription drugs and is "different from or in addition to" or "otherwise not identical with" the requirements of the three federal statutes listed in the section. 21 U.S.C. § 379r(a).

If so, the state law is preempted unless it is part of the "product liability law of any State."  Id. § 379r(e).

The TCPA is a consumer protection statute, enacted in 1977 and modeled after the Federal Trade Commission Act.  See Tenn. Code Ann. §§ 47-18-101, 47-18-102, 47-18-115.  The TCPA bars many business practices as "unfair or deceptive acts or practices."  Id. § 47-18-104(a).  Among other practices, it regulates the manner in which goods are represented and advertised, including representations about their uses and benefits.  See id. § 47-18-104(b)(5); see also, e.g., Local TV Tenn. LLC v. N.Y.S.E. Wolfchase LLC, No. W2017-00675-COA-R3-CV, 2018 WL 1721866, at *6 (Tenn. Ct. App. Apr. 9, 2018).  The parties do not dispute that the TCPA claim falls within the scope of § 379r(a).  See, e.g., Goldstein v. Walmart, Inc., --- F. Supp. 3d ---, 2022 WL 16540837, at *10-12 (S.D.N.Y. 2022) (finding that consumer protection claims based on purportedly false or misleading over-the-counter drug labels were preempted by § 379r(a)); see also Critcher v. L'Oreal USA, Inc., 959 F.3d 31, 38 (2d Cir. 2020) (noting that the FDCA's similar preemption provision for cosmetics bars plaintiffs "from seeking to impose additional or different labeling requirements through" state consumer protection laws).

11

Since the TCPA claim falls within § 379r(a), the next question is whether the claim is exempted from preemption because it is part of the "product liability law of any State." The claim is not exempted. The term "product liability law" is undefined in the federal statute. It is well established, however, that where a federal statute uses a term with a settled meaning in the common law, "a court must infer, unless the statute otherwise dictates, that Congress meant to incorporate the established meaning" of the term. Felder v. U.S. Tennis Ass'n, 27 F.4th 834, 843 (2d Cir. 2022) (citation omitted). This is because

> where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

United States v. Soler, 759 F.3d 226, 233 (2d Cir. 2014) (citation omitted).

Although the precise contours of "product liability law" are indefinite, certain characteristics of such laws are clear and presumed to have been adopted by Congress. Specifically, product liability law refers to a body of law, originally developed through the common law, aimed at providing relief for personal and property damage caused by defective products.

12

Black's Law Dictionary, for example, defines products liability as a "manufacturer's or seller's tort liability for any damages or injuries suffered by a buyer, user, or bystander as a result of a defective product" and defines a products-liability action as a

> lawsuit brought against a manufacturer, seller, or lessor of a product -- regardless of the substantive legal theory or theories on which the lawsuit is brought -- for personal injury, death, or property damage caused by the manufacture, construction, design, formulation, installation, preparation, or assembly of a product.

Black's Law Dictionary (11th ed. 2019) (emphases added).  This definition aligns with definitions from the time of § 379r's enactment.  See Products Liability, Products Liability Action, Black's Law Dictionary (7th ed. 1999); Product Liability, Black's Law Dictionary
(6th ed. 1990).

Similarly, the Restatement (Third) of Torts: Products Liability notes that "products liability is a discrete area of tort law which borrows from both negligence and warranty." Restatement Third of Torts: Prod. Liab. § 1 cmt. a (Am. L. Inst. 1998) (emphasis added).  The Restatement reviews the evolution of products liability law from its origins in claims of manufacturing defects, which have a "long history in the common law," to more recent developments in claims for design defects

and inadequate instructions or warnings.  Id.  The Restatement also explains that products liability claims should be based on personal or property damage and that "[s]ome categories of loss, including those often referred to as 'pure economic loss,' are more appropriately assigned to contract law."  Id. § 21 cmt. a.

These descriptions are consistent with a statement in the legislative history of § 379r.  Specifically, a Senate report preceding the enactment of § 379r notes that "the legislation explicitly provides that it shall not be construed to modify or otherwise affect the traditional product liability law of any State.  Tort liability rules and requirements would remain unchanged and unaffected."  S. Rep. No. 105-43, at 66 (1997) (emphases added).

Thus, various sources suggest that in exempting claims brought under the "product liability law of any State," Congress intended to exempt state law claims based on traditional theories of liability, largely grounded in tort law, for personal and property damage caused by defective products.  That understanding of product liability law is adopted here in reviewing the scope of Congress's express preemption decision.[4]

---

[4] The Plaintiffs argue that the interpretation of the term "product liability law" is a question of state law and that since there are no opinions from Tennessee's highest court holding that TCPA claims are not product liability claims, the TCPA claim should survive.  But the interpretation of a federal

14

As already explained, the TCPA is a consumer protection statute modeled on a federal law. It did not arise from the development of the common law of torts. Nor does it aim primarily to provide relief to plaintiffs injured by defective products. And, where products liability law involves claims of personal or property damage, see id. § 29-28-102(6), the TCPA authorizes plaintiffs to bring claims based solely on economic loss. See id. § 47-18-109(a)(1). Indeed, some Tennessee courts have interpreted the TCPA to bar claims based on certain personal injuries, rather than on mere economic loss. See, e.g., Birdsong v. Eli Lilly & Co., 2011 WL 1259650, at *3 (M.D. Tenn. Mar. 31, 2011); Kirksey v. Overton Pub, Inc., 804 S.W.2d 68, 73 (Tenn. Ct. App. 1990). Accordingly, the TCPA does not fall within the "product liability law of any State" and is thus not exempt from the express preemption provision of the FDCA. As a result, the TCPA claim is dismissed as preempted.

---

statute is a question of federal law. See, e.g., Johnson v. United States, 559 U.S. 133, 138 (2010). Moreover, even if state law were the appropriate source to consult, the definition of "product liability action" in the TPLA is relevantly similar to that adopted here. The TPLA provides that a "product liability action" is one "brought for or on account of personal injury, death or property damage caused by" a defective product. Tenn. Code Ann. § 29-28-102(6). The Tennessee definition of a product liability action also lists several illustrative theories of liability with roots in the common law. See id.

III. The Tennessee Products Liability Act

The defendant argues that all the Plaintiffs' common law claims must be dismissed because they have been "subsumed" within the TPLA. The motion to dismiss the remaining claims on this ground is denied.

The TPLA "provides an extensive statutory framework for all claims arising from injuries alleged to have been caused by products." Coffman v. Armstrong Int'l, Inc., 615 S.W.3d 888, 895 (Tenn. 2021). "Through its enactment, the TPLA superseded common law claims for personal injuries stemming from alleged defects in products or failure to warn of the dangers associated with a product." Id. The TPLA applies to any "product liability action," which is defined in the statute as any action

> brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation; concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

Tenn. Code Ann. § 29-28-102(6) (emphases added). The TPLA provides various rules governing product liability claims including, for example, a specific statute of limitations and

16

rules regarding the determination of whether a product at issue is defective or unreasonably dangerous.  See id. §§ 29—28-103; 29-28-105.

Here, the defendant argues that all the Plaintiffs' claims must be dismissed essentially because the Plaintiffs did not note in the master complaint or the SFC that the claims were brought under the TPLA.  This argument fails.  "The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of the claim.  Factual allegations alone are what matters."  Townsend v. Benjamin Enters., 679 F.3d 41, 57 (2d Cir. 2012) (citation omitted).

Although the TPLA provides a statutory framework for product liability claims made under Tennessee law, plaintiffs can still bring claims under that statute based on multiple traditional common law theories of product liability, as the plaintiffs have done here.  See, e.g., Coffman, 615 S.W.3d 888, 893 (addressing TPLA claims based on both negligence and strict liability failure to warn); Tatham v. Bridgestone Americas Holding, Inc., 473 S.W.3d 734, 739 (Tenn. 2015) (addressing TPLA claims based on strict liability, negligence, and breaches of implied warranty of fitness, implied warranty of merchantability, and duty to warn).  The defendant does not argue that the Plaintiffs' pleadings are insufficient to present

17

these theories and to provide it with adequate notice. Instead, it faults the Plaintiffs simply for failing to cite the TPLA. This is insufficient.

## Conclusion

The Plaintiffs' TCPA claim is dismissed. The motion to dismiss the remaining claims on the grounds that they are subsumed within the TPLA is denied.

Dated: New York, New York
April 21, 2023

DENISE COTE
United States District Judge